**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
Nicholas R. Barthel, Esq. (SBN: 319105)
nicholas@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

[Additional Counsel On Signature Page]

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **JACK DINH, Individually and On Behalf of All Others Similarly Situated,**<br><br>Plaintiff,<br><br>v.<br><br>**CHECKERS DRIVE-IN RESTAURANTS, INC.,**<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>I.   **CAL. CIV. CODE § 1798.81.5;**<br><br>II.  **CAL. BUS. PROF. CODE §§ 17200, *ET SEQ*.;**<br><br>III. **NEGLIGENCE**<br><br><br>**JURY TRIAL DEMANDED** |

The plaintiff JACK DINH ("Plaintiff" or "Mr. Dinh"), brings this Class action complaint on behalf of himself individually and all others similarly situated, by and through their attorneys, against Defendant CHECKERS DRIVE-IN RESTAURANTS, INC. ("Checkers" or "Defendant") and allege upon information and belief as follows:

## INTRODUCTION

1.  Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

2.  While many violations are described below with specificity, this Complaint alleges violations of each statute cited in its entirety.

3.  Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant.

4.  To ensure that that personally identifiable information ("PII") about California residents is protected, the California legislature enacted California Civil Code § 1798.81.5. The creation of this bill provided Plaintiff, and all other persons similarly situated within the United States, a right to keep their personal information maintained by Defendant confidential.

5.  Under this title, businesses, including Defendant, are required to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure. Cal. Civ. Code § 1798.81.5.

6.  Defendant has neglected its duty to do so and has allowed unauthorized access to its customers' PII, including, but not limited to, credit card and bank account numbers.

7. As alleged in greater detail below, since at least 2016, Defendant's cyber security has been substantially deficient, resulting in a clear violation of Cal. Civ. Code § 1798.81.5, among other laws.

8. Notwithstanding this failure to abide by its statutory duty, Defendant continued to represent itself as a company that "strive[s] to use reasonable safeguards to help prevent loss, misuse and unauthorized access, disclosure or modification of Personal Information."

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) of the Class and Subclass Action Fairness Act ("CAFA") because the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, with at least one member of the proposed Class and Subclass being a citizen of a different state than Defendant.

10. This Court has personal jurisdiction over Defendant because Defendant conducts business in California and maintains sufficient contacts with the state.

11. Venue is appropriate in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons:

    (i) Plaintiff resides in Orange County, California which is within this judicial district;

    (ii) the injury to Plaintiff occurred within this judicial district; and,

    (iii) Defendant conducted business within this judicial district at all relevant times.

**PARTIES**

12. Mr. Dinh is a resident and citizen of Orange County in the State of California.

13. Defendant is incorporated under the laws of the State of Delaware with its principal place of business and headquarters located in Tampa, Florida.

14. Upon information and belief, Defendant is one of largest chains of drive through fast service restaurants in the United States, with an estimated $800 million per year in revenue derived from the sale of food at its over 800 locations nationwide.

15. Defendant operates two chains of restaurants in the United States: "Checkers" in the Southwest and Northeast, and "Rally's" in the Midwest and California. Both chains offer similar products, which include hamburgers, hot dogs, and french fries.

## NATURE OF THE CASE

16. In carrying out its business, Defendant uses an electronic point-of-sale ("POS") system to collect payment information from the magnetic stripe on customers' credit and debit cards.

17. Upon information and belief, Defendant's POS system can extract all the data contained in the magnetic stripes of credit cards and debit cards, including the cardholder name, payment card number, card verification code, and expiration date.

18. To alleviate consumers' concerns about sharing this PII with Defendant, Defendant provides its customers with a "privacy policy," which outlines the various ways Defendant may use a customer's PII.[1]

19. Within that Privacy Policy, Defendant represents to consumers that it "strive[s] to use reasonable safeguards to help prevent loss, misuse and unauthorized access, disclosure or modification of Personal Information provided or collected through the Checkers *Online Services*."[2]

20. Defendant makes no such security assurances on its website for data collected on-site at one of its restaurant locations.

---

[1] https://www.rallys.com/privacy/
[2] https://www.rallys.com/privacy/#security

21.  While this assurance made by Defendant on its website limits itself to information gathered on the website, reasonable consumers are led to believe that Defendant strives for data security as a company policy and that Defendant would exercise the same care with information gathered on-site at the various restaurant locations.

22.  Consumers reasonably believe that the PII collected on-site at Checkers and Rally's restaurants would remain private and would not be subject to unauthorized access and use.

23.  Nevertheless, Defendant allowed a malicious piece of malware to be installed on roughly 15% of its POS systems nationwide.[3]

24.  This malware was designed with the insidious goal of extracting the PII from payment cards, including cardholder name, payment card number, card verification code and expiration date, from all customer credit and debit cards used at any infected Checkers or Rally's location.[4]

25.  On information and belief, the malware succeeded in its goal, and the stolen PII is now available to the general public online and/or on the dark web.

26.  Defendant's actions contradict and violate its written assurances to customers that it "strive[s] to use reasonable safeguards to help prevent loss, misuse and unauthorized access, disclosure or modification of Personal Information . . ."[5]

27.  POS security breaches are not a novel or new threat to businesses. Business owners were put on notice of the magnitude of this threat as far back as 2005, when TJX Companies Inc., the parent company of TJ Maxx stores, experienced an attack, similar to the one at present, which compromised 45.6 million credit card numbers.[6]

---

[3] https://www.checkers.com/security-issue
[4] *Id.*
[5] https://www.rallys.com/privacy/

28. The threat of a POS attack, such as the attack which is the subject of this lawsuit, can be mitigated through best practices, such as using encryption, walling the POS system from the internet, installing anti-virus on the POS system, disabling remote access to the POS system, using secure passwords, and securing the POS system with video surveillance.[7]

29. Upon information and belief, Defendant did not take all or any reasonable measures to protect its customers' PII in connection with the POS system, and as a result, has rendered its customers' PII accessible to the general public online and/or on the dark web.

30. This breach of duty demonstrates that Defendant has misrepresented itself as striving "to use reasonable safeguards to help prevent loss, misuse and unauthorized access, disclosure or modification of Personal Information."

## FACTUAL ALLEGATIONS

31. Plaintiff incorporates by reference all the above paragraphs of this complaint as if fully stated herein.

32. Over 100 Rally's and Checkers restaurant locations were affected by POS malware between 2016 and the present.[8]

33. One of the infected Rally's restaurants, Rally's 4088, is located at 105 N. Beach Blvd., Anaheim, CA 92801. This restaurant was infected by POS malware between October 9, 2018 and April 8, 2019.[9]

34. Plaintiff visited Rally's 4088 several times between October 9, 2018 and April 8, 2019 to purchase food and/or beverages.

35. During each of those visits, Plaintiff used his credit card to pay for the meal.

---

[6] https://www.computerworld.com/article/2544306/tjx-data-breach--at-45-6m-card-numbers--it-s-the-biggest-ever.html
[7] https://securebox.comodo.com/pos-system/pos-protection-tool/
[8] *See* https://www.checkers.com/security-issue/#affected-stores
[9] *Id.*

36. Plaintiff's credit card contains a magnetic stripe from which Defendant's POS system—and the malware infecting that system—could extract Plaintiff's PII, including his name, payment card number, card verification code, and expiration date.

37. Upon information and belief, the malware contained on Defendant's POS system extracted this PII from Plaintiff's credit card and this information was subsequently made publicly accessible on the internet and/or the dark web.

38. Plaintiff's PII would not have been extracted from his credit card, nor would it have been made accessible online, if it weren't for Defendant's negligence and lack of reasonable measures to prevent a POS malware attack.

39. Plaintiff reasonably expected that Defendant would take reasonable measures to ensure data security of sensitive information, and had Plaintiff known that his information would be compromised, he would not have eaten at Defendant's restaurant.

40. As of the filing of this Complaint, Defendant has not provided Plaintiff with actual notice of the existence of the data breach.

## CHOICE OF LAW

41. The State of California has sufficient interest in the conduct at issue in this complaint, such that California law may be uniformly applied to the claims of the proposed Class.

42. Defendant does substantial business in California, and a significant portion of the proposed nationwide Class and California Subclass members are located in California. There are at least nine Rally's restaurants in the State of California.

43. Defendant avails itself to these California citizens by soliciting directly to them.

44. The State of California also has the greatest interest in applying its law to Class and Subclass members' claims. California's governmental interests include not only compensating resident consumers under its consumer protection laws, but

also what the State has characterized as a "compelling" interest in using its laws to preserve a business climate free of unfair and deceptive practices. *Diamond Multimedia Sys. v. Sup. Ct.*, 19 Cal. 4th 1036, 1064 (1999). Moreover, the State has expressly demonstrated an interest in protecting California consumers' personal information, as well as encouraging California business to provide reasonable security to protect consumer information. *See* Cal. Civ. Code § 1798.81.5(a)(1).

45.     If other states' laws were applied to Class and Subclass members' claims, California's interest in discouraging resident corporations from engaging in the sort of unfair and deceptive practices alleged in this complaint would be significantly impaired. California could not effectively regulate a company like First American, which does business throughout the United States, if it can only ensure remuneration for consumers from one of the 50 states affected by conduct that runs afoul of its laws.

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action on behalf of himself individually and on behalf of all others similarly situated, pursuant to Federal Rule Civil Procedure 23(b)(1), (b)(2) and/or (b)(3).

47.     The putative Class ("the Class") that Plaintiff seeks to represent is composed of:

> All persons within the United States who used a payment card, containing a magnetic stripe with extractable PII, at one of Defendant's restaurants that was infected by POS malware and during the dates that restaurant was infected.

48.     The putative Class and Subclass ("the Subclass") that Plaintiff seeks to represent is composed of:

> All persons within the California who used a payment card, containing a magnetic stripe with extractable PII, at one of

Defendant's California restaurants that was infected by POS malware and during the dates that restaurant was infected.

49. Excluded from the Class and Subclass are any of Defendant's officers, directors, employees, affiliates, legal representatives, attorneys, heirs, and assigns, and any entity in which Defendant has a controlling interest. Judicial officers presiding over this case, its staff, and immediate family members, are also excluded from the Class.

50. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. While the exact number of the Class and Subclass members is unknown to Plaintiff at this time, such information can be ascertained through discovery from records maintained by Defendant.

51. There is a well-defined community of interest among the members of the Class and Subclass because common questions of law and fact predominate, Plaintiff's claims are typical of the members of the Class, and Plaintiff can fairly and adequately represent the interests of the Class.

52. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class and Subclass are:

   a) Whether Plaintiff and the Class and Subclass had their private and confidential information extracted from payment cards by malware at one of Defendant's restaurants while those restaurants were infected with said malware;

   b) Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure as required by Cal. Civ. Code § 1798.81.5(b);

c) Whether Plaintiff and the Class and Subclass are entitled to damages under Cal. Civ. Code § 1798.84(b); and

d) Whether Defendant's claims and representations, as alleged herein, are untrue, misleading, and/or reasonably likely to deceive the average consumer;

e) Whether Defendant's conduct violates California Civil Code §§ 1750, *et seq.*;

f) Whether Defendant's advertising is false, untrue, or misleading within the meaning of California Business & Professions Code §§ 17500, *et seq.*;

g) Whether Defendant's conduct is an unfair, fraudulent, or unlawful act or practice within the meaning of California Business & Professions Code §§ 17200, *et seq.*;

h) Whether Defendant's advertising is unfair, deceptive, untrue or misleading within the meaning of California Business & Professions Code §§ 17200, *et seq.*;

i) Whether Defendant acted negligently or intentionally in making the misrepresentations alleged herein;

j) Whether Defendant, through its conduct, received money that, in equity and good conscience, belongs to Plaintiff and members of the Class;

k) Whether Plaintiff and the putative Class and Subclass members are entitled to equitable relief, including but not limited to restitution and/or disgorgement of ill-gotten gains; and

l) Whether Plaintiff and the putative Class and Subclass members are entitled to injunctive relief as sought herein.

53.   Plaintiff's claims are typical of those of the other Class and Subclass members because Plaintiff, like every other Class and Subclass member, provided PII for

1   similar purposes and had their PII exposed through malware installed on
2   Defendant's POS systems.

3   54.   Plaintiff will fairly and adequately protect the interests of the Class and
4   Subclass.  Moreover, Plaintiff has no interest that is contrary to or in conflict
5   with those of the Class and Subclass he seeks to represent during the Class and
6   Subclass Period.

7   55.   Plaintiff has retained competent counsel experienced in Class and Subclass
8   action litigation to further ensure such protection and intend to prosecute this
9   action vigorously.

10  56.   The prosecution of separate actions by individual members of the Class and
11  Subclass would create a risk of inconsistent or varying adjudications with
12  respect to individual members of the Class, which would establish
13  incompatible standards of conduct for the Defendant in the State of California
14  and would lead to repetitious trials of the numerous common questions of fact
15  and law in the State of California. Plaintiff knows of no difficulty that will be
16  encountered in the management of this litigation that would preclude its
17  maintenance as a Class and Subclass action.  As a result, a Class and Subclass
18  action is superior to other available methods for the fair and efficient
19  adjudication of this controversy.

20  57.   Proper and sufficient notice of this action may be provided to the Class and
21  Subclass members through direct mail and email.

22  58.   The Class and Subclass members' individual damages are insufficient to justify
23  the cost of litigation, so that in the absence of Class and Subclass treatment,
24  Defendant's violations of law inflicting substantial damages in the aggregate
25  would not be remedied without certification of the Class.

26  59.   Absent certification of this action as a Class and Subclass action, Plaintiff and
27  the members of the Class and Subclass will continue to be damaged by the
28  unauthorized release of their individual identifiable medical information.

## CAUSES OF ACTION

### Count I

### Violations of California Civil Code §§ 1798.80, *et seq*.

60. Plaintiff incorporates by reference all of the above paragraphs of this complaint as if fully stated herein.

61. Defendant is a "business" within the meaning of Cal. Civil Code § 1798.80(a).

62. The payment card information that Defendant made available through the internet was personal information relating to Defendant's internal customer account or for the purpose of using that information in transactions relating to Plaintiff's and the Class' accounts, specifically for payment for services rendered. Therefore, Defendant "owned" or "licensed" the information as defined by Cal. Civil Code § 1798.81.5(a)(2).

63. All of this information that Defendant owns, licenses, or maintains constitutes "personal information" as defined by 1798.80(e) and 1798.81.5(d), as it contained each Plaintiff's and Class and Subclass members' name, credit card number, debit card number, or any other financial information.

64. Plaintiff and Class and Subclass members are natural persons that provided personal information to Defendant for its food services, and are therefore "Customers" as defined by Cal. Civil Code § 1798.80(c).

65. The breach of the personal information of thousands of Defendant's current and former customers was a "breach of the security system" of Defendant as defined by Civil Code section 1798.82(g).

66. By failing to implement reasonable security measures appropriate to the nature of the personal information of its current and former customers as described above, Defendant violated Civil Code section 1798.81.5.

67. In addition, by failing to immediately notify all affected current and former customers that their personal information had been acquired (or was reasonably

1    believed to have been acquired) by unauthorized persons in the Data Breach,

2    Defendant violated Civil Code section 1798.82 of the same title.

3    68.    Defendant's failure to immediately notify its customers of the breach caused

4    Plaintiff and Class and Subclass members to suffer damages because they have

5    lost the opportunity to immediately: (i) buy identity protection, monitoring, and

6    recovery services; (ii) flag asset, credit, and tax accounts for fraud, including

7    reporting the theft of their Social Security numbers to financial institutions,

8    credit agencies, and the Internal Revenue Service; (iii) purchase or otherwise

9    obtain credit reports; (iv) monitor credit, financial, utility, explanation of

10   benefits, and other account statements on a monthly basis for unrecognized

11   credit inquiries, Social Security numbers, home addresses, charges, and/or

12   medical services; (v) place and renew credit fraud alerts on a quarterly basis;

13   (vi) routinely monitor public records, loan data, or criminal records; (vii)

14   contest fraudulent charges and other forms of criminal, financial and medical

15   identity theft, and repair damage to credit and other financial accounts; and

16   (viii) take other steps to protect themselves and recover from identity theft and

17   fraud, such as buying identity theft insurance, which is an out-of-pocket cost.

18   69.    As Defendant violated Civil Code sections 1798.81.5 and 1798.82, Defendant

19   "may be enjoined" under Civil Code section 1798.84(e).

20   70.    Plaintiff requests that the Court enter an injunction requiring Defendant to

21   implement and maintain reasonable security procedures to protect its

22   customers' personal information, including, but not limited to, ordering that

23   Defendant: (1) engage third-party security auditors/penetration testers as well

24   as internal security personnel to conduct testing consistent with prudent

25   industry practices, including simulated attacks, penetration tests, and audits on

26   Defendant's systems on a periodic basis; (2) engage third-party security

27   auditors and internal personnel to run automated security monitoring consistent

28   with prudent industry practices; (3) audit, test, and train its security personnel

regarding any new or modified procedures; (4) purge, delete and destroy, in a secure manner, customer data not necessary for its business operations; (5) conduct regular database scanning and securing checks consistent with prudent industry practices; (6) periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach consistent with prudent industry practices; (7) receive periodic compliance audits by a third party regarding the security of the computer systems Defendant used to store the personal information of its current and former employees; (8) meaningfully educate its current and former employees about the threats they face as a result of the loss of their PII to third parties, as well as the steps they must take to protect themselves; and (9) provide ongoing identity theft protection, monitoring, and recovery services to Plaintiff and Class and Subclass members.

71.  Plaintiff further requests that the Court order Defendant to (1) identify and notify all members of the Class and Subclass who have not yet been informed of the Data Breach; and (2) notify affected current and former customers of any future data breaches by email within 24 hours of Defendant's discovery of a breach or possible breach and by mail within 72 hours.

72.  As a result of Defendant's violations of Civil Code §§ 1798.81.5 and 1798.82, Plaintiff and members of the Class and Subclass have incurred and will incur damages, including but not necessarily limited to: (1) the loss of the opportunity to control how their PII is used; (2) the compromise, publication, and/or theft of their PII and the PII of their family members; (3) out-of-pocket costs associated with the prevention, detection, insurance, and recovery from identity theft and/or unauthorized use of financial and medical accounts; (4) lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the breach, including but not limited to efforts spent

1  researching how to prevent, detect, contest and recover from identity and
2  health care/medical data misuse; (5) costs associated with the ability to use
3  credit and assets frozen or flagged due to credit misuse, including complete
4  credit denial and/or increased costs to use credit, credit scores, credit reports
5  and assets; (6) unauthorized use of compromised PII to open new financial
6  and/or health care or medical accounts; (7) tax fraud and/or other unauthorized
7  charges to financial, health care or medical accounts and associated lack of
8  access to funds while proper information is confirmed and corrected; (8) the
9  continued risk to their PII, which remain in Defendant's possession and are
10  subject to further breaches so long as Defendant fails to undertake appropriate
11  and adequate measures to protect the PII in its possession; and (9) future costs
12  in terms of time, effort and money that will be expended, to prevent, detect,
13  contest, and repair the impact of the PII compromised as a result of the Data
14  Breach for the remainder of the lives of the Class and Subclass members.

15  73.  Plaintiff seeks all remedies available under Civil Code section 1798.84,
16  including actual and statutory damages, equitable relief, and reasonable
17  attorneys' fees. Plaintiff also seeks reasonable attorneys' fees and costs under
18  applicable law including Federal Rule of Civil Procedure 23; California Code
19  of Civil Procedure § 1021.5; and Catalyst Theory.

20  **Count II**

21  **Violations of California's Unfair Competition Law ("UCL"),**
22  **Bus. & Prof. Code §§ 17200, *et seq.***

23  74.  Plaintiff re-alleges and incorporates by reference all of the above paragraphs of
24  this Complaint as though fully stated herein.

25  75.  Plaintiff and Defendant are each a "person" as defined by California Business
26  & Professions Code § 17201. California Business & Professions Code § 17204
27  authorizes a private right of action on both an individual and representative
28  basis.

76.   "Unfair competition" is defined by Business and Professions Code § 17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising." The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

77.   By and through Defendant's conduct alleged in further detail above and herein, Defendant engaged in conduct which constitutes unlawful, unfair, and/or fraudulent business practices, and unfair, deceptive, untrue or misleading advertising, as prohibited by California's UCL.

### A. "UNLAWFUL" PRONG

78.   Beginning as of approximately early as 2016, Defendant has committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Bus. & Prof. Code §§ 17200 *et seq.*, by not implement and maintain reasonable security procedures or providing notice after a security breach as required by Cal. Civ. Code § 1798.80, *et seq.*

79.   By holding consumer data in violation of those California laws, Defendant engaged in a pattern of "unlawful" business practices within the meaning of California's UCL.

### B. "UNFAIR" PRONG

80.   Beginning as of approximately early as 2016, Defendant committed acts of unfair competition as prohibited by Bus. & Prof. Code §§ 17200, *et seq.*

81.   Had Plaintiff and the putative Class and Subclass members been informed that Defendant's services actually would place Plaintiff's and the putative Class and Subclass members' personal information on the publicly accessible web, they

1    would not have purchased the service, would have paid less for it, or would
2    have purchased a different product.

3    82.   In other words, Defendant earned the business of Plaintiff and the putative
4          Class and Subclass members by using deceptive advertising, which placed
5          competitors that had spent money on cyber security at a disadvantage.

6                          C. "FRAUDULENT" PRONG

7    83.   Beginning as of approximately early as 2016, Defendant engaged in acts of
8          unfair competition, including those described above and herein, in violation of
9          Bus. & Prof. Code §§ 17200, *et seq*., by engaging in a pattern of "fraudulent"
10         business practices within the meaning of Bus. & Prof. Code §§ 17200, *et seq*.,
11         by falsely representing its services as secure, when, in fact, the services were
12         not secure as explained above.

13   84.   Plaintiff reserves the right to allege further conduct that constitutes other
14         fraudulent business acts or practices.

15   85.   In prosecuting this action for the enforcement of important rights affecting the
16         public interest, Plaintiff seeks the recovery of attorneys' fees, which reward is
17         available to a prevailing Plaintiff in a Class and Subclass action such as this.

18                              **Count V**

19                             **Negligence**

20   86.   Plaintiff realleges and incorporates by reference the allegations contained in
21         each of the preceding paragraphs as if fully set forth herein.

22   87.   In collecting the financial and other personal information of its customers,
23         Defendant undertook and owed Plaintiff and Class and Subclass members a
24         duty to exercise reasonable care in safeguarding and protecting that
25         information. This duty included, maintaining and testing Defendant's security
26         systems and taking other reasonable security measures to protect and
27         adequately secure the PII of Plaintiff and Class and Subclass members from
28         unauthorized access. Moreover, Defendant was under the duty to timely notify

1  its former and current consumers that their information may have been

2  accessed.

3  88.  Defendant owed a duty of care to Plaintiff and Class and Subclass members

4  because they were foreseeable and probable victims of any inadequate security

5  practices. It was foreseeable that if Defendant did not take reasonable security

6  measures, the PII of Plaintiff and members of the Class and Subclass would be

7  stolen.

8  89.  Major corporations like Defendant face a higher threat of security breaches

9  than smaller companies due in part to the large amounts of data they possess

10  and Defendant knew or should have known its security systems were

11  inadequate. Yet Defendant failed to take reasonable precautions to safeguard

12  the Plaintiff's and the Class and Subclass members' PII. Even worse, up to the

13  filing of this complaint Plaintiff has not been provided actual notice that their

14  information may have been accessed by third parties. Therefore, Defendant

15  breached the duties it owed to its current and former customers.

16  90.  Under Cal. Civ. Code §§ 1798.80, *et seq*, Defendant was under a statutory duty

17  to protect its customer's information and to notify their customers if this

18  information was compromised. Despite this, Defendant had below average

19  cyber security and it still has not provided any customers with notice of the

20  data compromise. Therefore, Defendant is negligent per se.

21  91.  There is a very close connection between Defendant's failure to employ

22  reasonable security protections of its current and former customers' PII and the

23  injuries suffered by Plaintiff and Class and Subclass members. When

24  individuals' PII is exposed as occurred here, they are at risk for identity theft

25  and need to preventative measures.

26  92.  But for Defendant's failure to implement and maintain adequate security

27  measures to protect its customers' PII and failure to monitor its systems to

28  identify suspicious activity, the PII of Plaintiff and Class and Subclass

members would not have been at risk of theft or stolen, Plaintiff and Class and Subclass members would not have been injured, and Plaintiff and Class and Subclass members would not be at a heightened risk of identity theft in the future.

93. Defendant has acknowledged that some of its customers' PII was exposed as a result of malware being uploaded and undetected on their system. As a result of Defendant's negligence, Plaintiff and members of the Class and Subclass have suffered and will suffer injury, including but not necessarily limited to those listed above.

94. Plaintiff and the Class and Subclass are also entitled to damages and reasonable attorneys' fees and costs. Plaintiff also seeks reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23; California Code of Civil Procedure § 1021.5; and Catalyst Theory.

<strong>PRAYER FOR RELIEF</strong>

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class and Subclass the following relief against Defendant:

- That the Court determine that this action may be maintained as a Class and Subclass Action by certifying this case as a Class and Subclass Action as to the Class;

- That the Court appoint Plaintiff to serve as the Class and Subclass Representative in this matter and appoint Plaintiff's Counsel as Class and Subclass Counsel;

- That Plaintiff and the Class and Subclass be awarded prejudgment interest, reasonable attorneys' fees, and costs of suit pursuant to Code of Civil Procedure § 1021.5 and California Civil Code § 1780, and/or any other applicable law;

- That Defendant's wrongful conduct alleged herein be adjudged and decreed to violate the statutes and laws asserted herein;

- That Plaintiff and the Class and Subclass be awarded injunctive relief prohibiting such conduct in the future;

**For Count I**

**Violations of California Civil Code §§ 1798.80,** *et seq.*

- Costs of Suit;
- An award of actual damages according to proof per violation to each of the named Plaintiff individually and to each member of the Class and Subclass pursuant to Cal. Civ. Code § 1798.84(b); and
- Any and all further relief that this Court deems just and proper.

**For Count II**

**Violations of Cal. Bus. & Prof. Code §§ 17200,** *et seq.*

- Costs of Suit;
- Restitution and injunctive relief pursuant to Bus. & Prof. Code § 17535; and
- Recovery of reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5; and
- Any and all further relief that this Court deems just and proper.

**For Count III**

**Negligence**

- Costs of Suit;
- Actual damages;
- Punitive damages;
- Recovery of reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5; and
- Any and all further relief that this Court deems just and proper.

///
///
///

## TRIAL BY JURY

95.     Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and hereby demands, a trial by jury on all causes of action and claims with respect to which they have a right to a jury trial.

Dated: July 2, 2019                          **KAZEROUNI LAW GROUP, APC**

                                             By:   _/s/ Abbas Kazerounian_____
                                                    Abbas Kazerounian, Esq.
                                                    *Attorneys for Plaintiff*


**Additional Counsel for Plaintiff**


**HYDE & SWIGART**
Robert L. Hyde, Esq. (SBN 227183)
bob@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, California 92101
Telephone: (619) 233-7770
Facsimile:  (619) 297-1022